STATE OF NORTH CAROLINA v. ELMER DAVIS, JR., (PETITION OF NIVENS AND BELL, ATTORNEYS).

(Filed 12 April, 1967.)

**1. Appeal and Error § 2—**

The Supreme Court has the power to issue any remedial writ necessary to give it general supervision and control over proceedings of the lower courts, Constitution of North Carolina, Art. IV, § 10(1), and to this end will grant *certiorari* to review an order of the Superior Court which involves a question of public importance.

**2. Attorney and Client § 7—**

The language of G.S. 15-5 is clear and unambiguous and provides for the payment of fees to lawyers who are appointed to represent indigent defendants in the courts of this State but does not authorize the payment of fees to lawyers appearing for indigent defendants in the courts of the United States; therefore an order of the Superior Court that attorneys representing an indigent should be paid a fee out of State funds for services in representing their client in the Federal Courts, in addition to the sum theretofore paid them for their services in representing the indigent in the State courts, must be reversed.

**3. Attorney and Client § 1—**

An attorney is an officer of the court and takes his office *cum onere*, including the duty of rendering gratuitous service to a poor person when appointed by the court to do so.

**4. Attorney and Client § 7; Constitutional Law § 23—**

Since one of the burdens of an attorney is to render gratuitous services to an indigent when appointed by the court to do so, an attorney appointed to represent an indigent may not complain that his constitutional rights under the Equal Protection and Due Process Clauses of the Federal Constitution were violated because of the fact that he received no or inadequate compensation for services rendered to an indigent.

**5. Statutes § 4—**

A person who asserts that a particular act violates his rights under the Constitution ordinarily must point out the particular provision of the Constitution that he claims is violated.

**6. Constitutional Law § 6—**

The legislative power is supreme over the public purse, and moneys paid into the hands of the State Treasurer by virtue of State law become public funds which may be disbursed only in accordance with legislative authority. Article XIV, § 3, of the Constitution of North Carolina.

ON *certiorari*, allowed 4 November 1966, on petition of the Attorney General of North Carolina to review a judgment entered by *McLean, J.*, 14 October 1966, B Session of MECKLENBURG, ordering the State of North Carolina to pay to Walter B. Nivens and Charles V. Bell, pursuant to Ch. 1080 of the Session Laws of 1963, the sum of $8,000, to be equally divided between them, for legal services rendered by them in the courts of the United States in behalf of Elmer Davis, Jr., an indigent defendant, whose sentence of death by asphyxiation, based upon a jury verdict of guilty of murder in the first degree, had been upheld by the Supreme Court of North Narolina in the case of *S. v. Davis*, 253 N.C. 86, 116 S.E. 2d 365, in an opinion filed 12 October 1960, which fee of $8,000 was allowed them in addition to the sum of $1,700 formerly paid to them by Mecklenburg County by order of court for their legal services in defending the said Elmer Davis, Jr., in the courts of the State of North Carolina. Docketed and argued as Case No. 272-L, Fall Term 1966.

The history of this case is as follows: At the 2 November 1959 Term of the Superior Court of Mecklenburg County the grand jury returned a true bill of indictment charging that Elmer Davis, Jr., on 20 September 1959 with force and arms at and in Mecklenburg County did unlawfully, willfully, and feloniously while perpetrating a felony, to wit, rape, kill, and murder Foy Bell Cooper. On 10 November 1959 Francis O. Clarkson, Judge presiding over the court in Mecklenburg County, entered an order finding that the said Elmer Davis, Jr., is an indigent person charged in an indictment with the capital felony of murder in the first degree, and appointed Walter B. Nivens and Charles V. Bell to represent him "in the Superior Court of Mecklenburg County, North Carolina." Upon this indictment the said Elmer Davis, Jr., was tried by Campbell, J., and a jury at the 7 December 1959 Regular Criminal Term of Mecklenburg County Superior Court. Upon his arraignment defendant through his court-appointed counsel, Nivens and Bell, entered a

plea of not guilty. The jury returned for its verdict, "Guilty of murder in the first degree." From a judgment of death in the manner prescribed by law, defendant appealed. Upon his appeal the Supreme Court of North Carolina found no error in the trial below. *S. v. Davis, supra.* Thereafter, the said Nivens and Bell, court-appointed counsel for Elmer Davis, Jr., petitioned the Supreme Court of North Carolina for a rehearing, which motion was denied.

Upon the denial of their petition for rehearing by the Supreme Court of North Carolina, the said Nivens and Bell procured from the North Carolina Supreme Court a stay of execution of the death sentence of Elmer Davis, Jr., and filed a petition for *certiorari* before the United States Supreme Court. The United States Supreme Court denied the *certiorari.* Mr. Justice Douglas was of the opinion that the *certiorari* should be granted. *Davis v. State of North Carolina,* 365 U.S. 855, 5 L. Ed. 2d 819 (20 March 1961).

Thereafter, the said Nivens and Bell filed a petition in behalf of the said Elmer Davis, Jr., who was in the custody of the State of North Carolina under sentence of death, for a writ of *habeas corpus* in the United States District Court for the Eastern District of North Carolina, Raleigh Division. Butler, Chief Judge for the United States District Court for the Eastern District, filed an elaborate written opinion on 25 July 1961 denying the writ. *Davis v. State of North Carolina,* 196 F. Supp. 488. Petitioners, in behalf of the said Elmer Davis, Jr., appealed to the United States Court of Appeals, which court in a majority opinion, with Haynsworth, J., dissenting, reversed Judge Butler's decision and remanded the case to the Federal District Court for a rehearing on the question of whether defendant's confession was obtained within the bounds of due process. *Davis v. State of North Carolina,* 310 F. 2d 904, decided 7 November 1962. Upon the rehearing, pursuant to the mandate of the Fourth Circuit Court of Appeals, Judge Butler wrote an elaborate opinion again denying the petition for a writ of *habeas corpus. Davis v. State of North Carolina,* 221 F. Supp. 494. The opinion was filed 10 September 1963.

The said Nivens and Bell, in behalf of the said Elmer Davis, Jr., appealed again to the United States Court of Appeals, Fourth Circuit, which court in a majority opinion joined in by three judges, with two dissenting, affirmed Judge Butler's decision in an opinion filed 8 December 1964. *Davis v. State of North Carolina,* 339 F. 2d 770. The said Nivens and Bell, according to a petition for the allowance of counsel fees for their appearances for the said Elmer Davis, Jr., in the United States courts, allege that they again filed a petition for a *certiorari* with the United States Supreme Court.

The Supreme Court of the United States granted the petition for *certiorari* in the following language:

"No. 37, Misc. *Davis v. North Carolina.* C. A. 4th Cir. Motion for leave to proceed *in forma pauperis* and petition for writ of *certiorari* granted. The case is transferred to the appellate docket. Conrad O. Pearson for petitioner. T. W. Bruton, Attorney General of North Carolina, and James F. Bullock, Assistant Attorney General, for respondent. Reported below: 339 F. 2d 770." 382 U.S. 953, 15 L. Ed. 2d 358.

On 30 June 1966 the Supreme Court of the United States, in an opinion written by Chief Justice Warren expressing the views of six members of the Court, held that the confession of Elmer Davis, Jr., was involuntary and inadmissible in evidence. Mr. Justice Clark, in an opinion joined in by Mr. Justice Harlan, dissented on the ground that the findings supported the conclusion that the confession was voluntary. The majority opinion reversed the judgment of the Court of Appeals for the Fourth Circuit and remanded the case to the District Court to enter "such orders as are appropriate and consistent with this opinion, allowing the State a reasonable time in which to retry the petitioner." *Davis v. State of North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895.

On 19 July 1966 Walter B. Nivens and Charles V. Bell filed a petition in Mecklenburg County Superior Court stating in substance: Your petitioners have put in many hours in research, preparation of briefs, and perfection of appeals in the various courts of the United States (which we have set forth above); that they have incurred expenses in the amount of $1,758.72 in connection with their work in the Federal courts; that they have sought and obtained the assistance of another attorney in doing research; and that they are of the opinion that the reasonable value of their services rendered in all of these proceedings in the Federal courts, aside from the outlay of expenses, amounted to $30,000. Wherefore, they prayed the State court to enter an order that they be reimbursed for their expenses in the amount of $1,758.72 and be allowed attorney fees of $15,000 each. They filed as an exhibit to their petition an itemized statement of their alleged expenses in representing Elmer Davis, Jr., in the Federal courts.

The State of North Carolina filed an answer to the petition of Nivens and Bell for expenses and counsel fees for their appearances for Elmer Davis, Jr., in the United States courts, in which it alleges in substance: That the State of North Carolina is not liable for and is not authorized by law to pay any counsel fees and expenses to any attorney for services performed in the United States courts;

that petitioners Nivens and Bell have been compensated for their legal services in behalf of the defendant in both the Superior and Supreme Courts of North Carolina by the payment to them of $1,700 as fees by Mecklenburg County.

The County of Mecklenburg filed an answer to the request of Nivens and Bell for expenses and counsel fees in the United States courts, in which it alleges in substance: That it has paid to Nivens and Bell by order of court the sum of $1,700 for legal services rendered by them to Elmer Davis, Jr., in his trial in the Superior Court, the Supreme Court of North Carolina, and on a motion for rehearing in the State Supreme Court; that since the enactment of Ch. 1080 of the Session Laws of 1963, the State of North Carolina is responsible for the payment of legal fees for indigent defendants charged with crime in the State courts; and that it is not responsible, certainly since the legislation of 1963, for the payment of counsel fees for an indigent defendant in the United States courts.

On 13 October 1966 McLean, J., allowed petitioners Nivens and Bell to amend their petition for counsel fees to allege: "That the failure to allow these petitioners attorney fees for the defendant herein for their services expended in the Federal Courts of the United States is a denial of their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States and a deprivation of their rights under the Constitution of North Carolina."

Judge McLean on 14 October 1966 heard the petition of the said Nivens and Bell for an allowance of attorney fees for their representation of Elmer Davis, Jr., in the United States courts. He entered a judgment wherein, after reciting the history of the case as we have set forth above, he stated in substance: That the State of North Carolina elected not to retry Elmer Davis, Jr., for the rape and murder of Foy Bell Cooper, and he was thereafter ordered released from the State Prison in Raleigh, North Carolina, by the Honorable Algernon Butler, Chief Judge of the United States District Court for the Eastern District of North Carolina; that the Attorney General's office and the solicitor of the Mecklenburg solicitorial district represented the State of North Carolina in the United States courts, that it is stipulated by all the parties that the expenses incurred by the petitioners herein in representing the defendant Davis in the courts of the United States amounted to $1,758.72; and that during all the proceedings Elmer Davis, Jr., was an indigent. When Nivens and Bell were appointed to represent Elmer Davis, Jr., Mecklenburg County was liable to pay them reasonable attorney fees, and that Mecklenburg County did pay these petitioners the sum of $1,700 for their services, and that since

21 June 1963 the responsibility for paying attorney fees for indigent defendants was placed upon the State of North Carolina pursuant to the provisions of Ch. 1080 of the Session Laws of 1963. This case originated in the North Carolina State courts and hence the State of North Carolina is liable for payment of attorney fees due these petitioners; that the State of North Carolina paid all costs assessed by the government which covered the costs in the United States District Court, the United States Court of Appeals for the Fourth Circuit, and the United States Supreme Court in the amount of $3,700; that a refusal to pay these petitioners their fees for representing Elmer Davis, Jr., in the Federal courts is a denial of their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and a deprivation of their rights under the Constitution of North Carolina. Wherefore, Judge McLean ordered and decreed that the State of North Carolina pay to petitioners Nivens and Bell "out of the Indigent Defense Fund established pursuant to Chapter 1080 of the General Session Laws of 1963" the sum of $8,000 for their appearances for the defendant Davis in the United States courts, which amount is to be equally divided between the petitioners herein, and said amount is allowed in addition to the $1,700 heretofore paid them by Mecklenburg County.

On 14 October 1966 McLean, J., entered an order staying the execution of his order for the payment of counsel fees to Nivens and Bell until the State of North Carolina could have his order for the payment of counsel fees reviewed by the Supreme Court, on condition that the State of North Carolina file application for *certiorari* within 15 days from 14 October 1966.

On 20 October 1966 the Attorney General of the State of North Carolina filed a petition for a writ of *certiorari* for a review by the Supreme Court of Judge McLean's order ordering the payment of $8,000 for counsel fees to the petitioners. We allowed the petition for *certiorari* on 4 November 1966.

*Attorney General T. W. Bruton, Deputy Attorney General Ralph Moody, and Assistant Attorney General George A. Goodwyn for the State, appellant.*

*W. B. Nivens, Charles V. Bell, and Calvin L. Brown for respondents, appellees.*

*Ruff, Perry, Bond, Cobb & Wade by James O. Cobb and William H. Cannon for Mecklenburg County.*

PARKER, C.J.   Article IV, Judicial Department, of the Constitution of North Carolina, was entirely rewritten by an amendment

adopted by a majority vote of the people of North Carolina in the general election held on 2 November 1962. Article IV, sec. 10(1), now provides in part: The Supreme "Court shall have the power to issue any remedial writs necessary to give it a general supervision and control over the proceedings of the other courts." The North Carolina Constitution, Article IV, sec. 8, as it was written before the general election of 2 November 1962 vested the Supreme Court with authority to issue any remedial writs to give it a general supervision and control over the proceedings of the inferior courts. *S. v. Cochran*, 230 N.C. 523, 53 S.E. 2d 663. The legal question here presented is of such public importance that we decided to exercise our constitutional supervisory authority to issue a *certiorari* to review the validity of Judge McLean's judgment ordering the State of North Carolina to pay Nivens and Bell the sum of $8,000 as legal fees for their appearances for defendant, Elmer Davis, Jr., in the United States courts "out of the Indigent Defense Fund established pursuant to Chapter 1080 of the General Session Laws of 1963."

On 10 November 1959 Francis O. Clarkson, Judge presiding over the court in Mecklenburg County, entered an order finding that Elmer Davis, Jr., is an indigent person charged in an indictment with the capital felony of murder in the first degree, and appointed Walter B. Nivens and Charles V. Bell to represent him "in the Superior Court of Mecklenbury County, North Carolina." Nivens and Bell appeared for the defendant Davis in the Superior Court of Mecklenburg County and in the Supreme Court of North Carolina, as set forth above. Pursuant to the mandatory provisions of G.S. 15-5 as it was in force prior to the 1963 Session of the General Assembly, the court entered an order that Mecklenburg County pay to the said Nivens and Bell a fee of $1,700 for their services in defending the said Davis in the Superior Court of Mecklenburg County and in the Supreme Court of North Carolina, which fee has been paid by Mecklenburg County.

Thereafter, the said Nivens and Bell filed a petition in behalf of the said Elmer Davis, Jr., who was in the custody of the State of North Carolina under sentence of death, for a writ of *habeas corpus* in the United States District Court for the Eastern District of North Carolina, Raleigh Division. Butler, Chief Judge for the United States District Court for the Eastern District filed a written opinion on 25 July 1961 denying the writ. *Davis v. State of North Carolina*, 196 F. Supp. 488. Thereafter, the said Nivens and Bell made appearances in behalf of the said Davis in various courts of the United States, and as a final result of their appearances the Supreme Court of the United States, in an opinion filed 30 June 1966, held

STATE *v.* DAVIS.

that the confession of Elmer Davis, Jr., was involuntary and inadmissible in evidence, and reversed the judgment of the Court of Appeals for the Fourth Circuit and remanded the case to the District Court to enter "such orders as are appropriate and consistent with this opinion, allowing the State a reasonable time in which to retry the petitioner." *Davis v. State of North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895. Nivens and Bell and the Attorney General of North Carolina entered into the following written stipulations signed by them:

> "1. That at the time of the appointment of Nivens and Bell, Attorneys, to represent Elmer Davis, Jr., by Judge Clarkson on the 10th of November, 1959, and down to the present date, Elmer Davis, Jr., was and is an indigent person.
>
> "2. That at no time did either Mr. Nivens or Mr. Bell receive an order from any Federal Judge or Federal Court appointing them or either of them as counsel for Elmer Davis, Jr., in any proceedings in the Federal Court."

On 18 March 1963 the Supreme Court of the United States handed down its decision in *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, overruling *Betts v. Brady,* 316 U.S. 455, 86 L. Ed. 1595, and held in the majority opinion that the Sixth Amendment's provision that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense was made obligatory upon the states by the Fourteenth Amendment.

The 1963 General Assembly of North Carolina, which was in session on March 18, passed Ch. 1080 of the Session Laws of 1963 as a result of the decision in the *Gideon* case. Ch. 1080 of the Session Laws of 1963, codified as G.S. 15-4.1, 15-5 *et seq.,* provides, in part, for the appointment of counsel by Superior Court Judges for every defendant in all felony cases when the court finds that the defendant is indigent and unable to employ counsel, but the act provides that the defendant may waive counsel if he so desires in a felony case, except in a capital case. G.S. 15-5 as it now is in force provides that the fees of counsel appointed by Superior Court Judges to defend indigent defendants shall be paid by the State of North Carolina.

Ch. 1080, section 4, of the Session Laws of North Carolina 1963, reads as follows:

> "There is hereby appropriated from the general fund of the State of North Carolina, or from any other available funds of the State, the sum of five hundred thousand dollars ($500,000.00) for the fiscal year ending June 30, 1964, and five hundred

thousand dollars ($500,000.00) for the fiscal year ending June 30, 1965, for the purpose. of paying the fees, costs and expenses provided for by this Act. All costs, fees, and expenses shall be paid by voucher issued by the State Treasurer according to the procedures for payment of debts due by the State and supported by order of the court."

For the fiscal year ending 30 June 1964 there was paid out of the State Treasury by orders of Superior Court Judges the sum of $238,956 in payment of fees to lawyers who were appointed by Superior Court Judges to represent 3,003 indigent defendants, and for the fiscal year ending 30 June 1965 there was paid out of the State Treasury by orders of Superior Court Judges the sum of $390,427 in payment of fees to lawyers who were appointed by Superior Court Judges to represent 3,941 indigent defendants. Ch. 914, section 2, of the Session Laws of North Carolina 1965 appropriated from the general fund of the State for counsel for indigent defendants $442,332 for the fiscal year ending 30 June 1966, and $475,382 for the fiscal year ending 30 June 1967. For the fiscal year ending 30 June 1966 there was paid out of the State Treasury by orders of Superior Court Judges the sum of $491,600 in payment of fees to lawyers who were appointed by Superior Court Judges to represent 4,450 indigent defendants: this was more money than appropriated by the General Assembly, so $50,000 was added to the appropriation from the State's contingency and emergency fund. For the fiscal year ending 30 June 1967 up through 31 March 1967 there was paid out of the State Treasury by orders of Superior Court Judges the sum of $379,950 in payment of fees to lawyers who were appointed by Superior Court Judges to represent 3,301 indigent defendants. All of these payments of fees by order of Superior Court Judges to lawyers who were appointed by Superior Court Judges to represent indigent defendants were made for representation in the courts of the State of North Carolina, and none for lawyers to represent indigent defendants in the courts of the United States. The above information was furnished from the records of the Administrative Assistant to the Chief Justice.

A careful study of Ch. 1080, Session Laws of 1963, shows that the language of the statute is clear and unambiguous, and that the statute provides for the payment of fees to lawyers who are appointed by Superior Court Judges of the State to represent such defendants only in the courts of the State of North Carolina. There cannot be read into the clear and unambiguous words of this statute language authorizing a Superior Court Judge of the State to order the State Treasury to pay public funds raised by taxation of its

people for fees for lawyers appearing for indigent defendants in the courts of the United States. There is no statute of North Carolina that provides for the payment of fees to lawyers representing indigent defendants in criminal cases in the United States courts.

G.S. 15-4 provides: "Every person, accused of any crime whatsoever, shall be entitled to counsel in all matters which may be necessary for his defense." In *Pardee v. Salt Lake County*, 39 Utah 482, 118 P. 122, the Court held that the Utah Constitution, Article 1, section 7, providing that no person shall be deprived of his property without due process of law, would not apply to make a county liable for the services of an attorney appointed by the court to defend an indigent accused. In a scholarly opinion, with voluminous citation of authority, the Court states in substance that the power to provide compensation for lawyers representing indigent defendants rests with the Legislature and not the courts. In *Ruckenbrod v. Mullins*, 102 Utah 548, 133 P. 2d 325, 144 A.L.R. 839, it is said:

> "The majority of jurisdictions hold that an attorney is an officer of the court with many rights and privileges, and must accept his office *cum onere*. One of the burdens incident to the office, recognized by custom of the courts for many years, is the duty of the attorney to render his services gratuitously to indigent defendants at the suggestion of the court."

Many cases and authorities are cited in support of the statement.

No Judge of the State of North Carolina entered an order authorizing Nivens and Bell to appear in behalf of the defendant, Elmer Davis, Jr., in the courts of the United States. Nivens and Bell and the Attorney General of North Carolina stipulated as follows: "That at no time did either Mr. Nivens or Mr. Bell receive an order from any Federal Judge or Federal Court appointing them or either of them as counsel for Elmer Davis, Jr., in any proceedings in the Federal Court."

This is stated in an annotation in 130 A.L.R. 1440:

> "The weight of authority supports the view that in the absence of statute providing therefor, an attorney who has been assigned by the court to defend an indigent accused cannot recover compensation therefor from the public."

Many cases are cited in support of the statement. To the same effect, 7 C.J.S., Attorney and Client, § 172a(1).

This is said in 7 Am. Jur. 2d, Attorneys at Law, § 207:

> "It has often been held that an attorney appointed by the court to defend cannot recover compensation from the public

for his services in the absence of an enabling statute. The reason is that an attorney, being an officer of the court, like other officers takes his office *cum onere,* and one of the burdens of office which custom has recognized is the gratuitous service rendered to a poor person at the suggestion of the court. The constitutional guaranty of the right of an accused to be heard by counsel does not impose any liability on the part of the government to pay an attorney assigned to represent the indigent. And the courts have stated that requiring an attorney to defend an accused who cannot pay does not involve an unconstitutional taking of property without compensation or without due process of law.

\*          \*          \*

"The circumstances under which an attorney may receive compensation for representing an indigent on an appeal from a conviction appears to be regulated by statute."

The United States Congress in 1964 — which was subsequent to the enactment of Ch. 1080, Session Laws of 1963 of North Carolina — passed an act providing for the appointment and payment of counsel for indigent defendants. 18 U.S.C.A. § 3006A.

In *Dolan v. United States,* 351 F. 2d 671, the United States Court of Appeals for the Fifth Circuit, in an opinion filed 8 October 1965, held that an attorney was not entitled to compensation for professional services rendered in representation of an indigent defendant by court appointment prior to enactment into law of the Criminal Justice Act of 1964. 18 U.S.C.A. § 3006A.

In *United States v. Dillon,* 346 F. 2d 633, decided 16 June 1965, rehearing denied 27 July 1965, the United States Court of Appeals for the Ninth Circuit stated:

". . . the vast majority of the courts which have passed on the question have denied claims of appointed counsel for nonstatutory just compensation, pointing out that representation of indigents under court order, without a fee, is a condition under which lawyers are licensed to practice as officers of the court, and that the obligation of the legal profession to serve without compensation has been modified only by statute. An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when

he is called upon to fulfill it, he cannot contend that it is a 'taking of his services.' Cf. *Kunhardt & Company, Inc., v. United States,* 266 U.S. 537, 45 S. Ct. 158, 69 L. Ed. 428 (1925)."

See a most interesting appendix to this opinion, stating in substance that representation of indigents upon court order is an ancient tradition of the legal profession, going as far back as fifteenth-century England and pre-Revolutionary America, and the appointment of counsel to represent an indigent is not a "taking." This appendix states:

> "Clearly, the lawyer's traditional obligation to represent indigents upon court order has not included any common-law right to compensation. And the statutory compensation which exists in some states usually contains limitations which in most cases would prevent a lawyer from receiving what his time is worth when working for private clients — limitations which would clearly be invalid if constitutional standards of just compensation were applicable. . . . These statutory fees, which frequently cover capital cases only, range from the Kansas maximum of $10 a day . . . to the $1,500 maximum per case in New York (for capital cases only). . . .
>
> "A Fifth Amendment 'taking' does not occur when the state simply requires an individual to fulfill a commitment he has made. [Citing authority.]"

*Griffin v. Illinois,* 351 U.S. 12, 100 L. Ed. 891, relied upon by Nivens and Bell is not in point. In that case a majority of the Court held the due process and equal protection clauses of the Fourteenth Amendment were violated by the State's denial of appellate review solely on account of a defendant's inability to pay for a transcript. The last paragraph of G.S. 15-4.1 reads: "When an appeal is taken under this section the county shall make available trial transcript and records required for an adequate and effective appellate review."

The State of North Carolina assigns as error this legal conclusion of Judge McLean: "That a refusal to pay these petitioners is a denial of their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and a deprivation of their rights under the Constitution of North Carolina." This assignment of error is sustained for the following reasons: One. Under the facts of this case and the law stated above, petitioners Nivens and Bell have no right under the equal protection and due process clauses of the Fourteenth

Amendment to compensation to be paid them by the State for their appearances in behalf of the defendant Davis in the United States courts. Two. Judge McLean in his judgment states in part "that a refusal to pay these petitioners is . . . a deprivation of their rights under the Constitution of North Carolina," but Judge McLean does not state any specific provision of the State Constitution that is violated. Nivens and Bell and Brown in their brief do not cite any specific provision of the Constitution of North Carolina that is violated. Constitutional questions are of great importance, and should not be presented in uncertain form to a court for decision. It is generally held that a person who asserts that a particular act violates his rights under the Constitution must point out the particular provision of the Constitution that he claims is violated. Ordinarily, a court will not inquire into the alleged violation of a constitutional right without a precise statement of the constitutional right violated, for that would lead to the court formulating a rule broader than that necessitated by the precise situation in question. *Rice v. Rigsby*, 259 N.C. 506, 131 S.E. 2d 469. Suffice it to say that petitioners Nivens and Bell have not shown any rights of theirs under the State Constitution will be violated by the State of North Carolina not paying them fees for representing the defendant Davis in the United States courts under the particular facts of this case.

The State of North Carolina assigns as error Judge McLean's judgment ordering and decreeing "that the State of North Carolina pay to these petitioners out of the Indigent Defense Fund established pursuant to Chapter 1080 of the General Session Laws of 1963 aforesaid, the sum of Eight Thousand ($8,000.00) Dollars, which amount is to be equally divided between the petitioners herein, and said amount is allowed in addition to the amount heretofore paid by Mecklenburg County to these petitioners." This assignment of error is good.

Moneys paid into the hands of the State Treasurer by virtue of a State law become public funds for which the Treasurer is responsible, and may be disbursed only in accordance with legislative authority. State Constitution, Article XIV, section 3; *Gardner v. Retirement System*, 226 N.C. 465, 38 S.E. 2d 314. To the same effect, 81 C.J.S., States, § 156.

So far as an exhaustive search upon our part discloses, and so far as briefs of counsel show, this is a case of first impression in this jurisdiction, and of first impression in the appellate courts of this Nation.

The judgment of Judge McLean ordering and decreeing "that the State of North Carolina pay to these petitioners out of the In-

digent Defense Fund established pursuant to Chapter 1080 of the General Session Laws of 1963 aforesaid, the sum of Eight Thousand ($8,000.00) Dollars, which amount is to be equally divided between the petitioners herein, and said amount is allowed in addition to the amount heretofore paid by Mecklenburg County to these petitioners," for their appearances for defendant Davis, an indigent, in the courts of the United States, under the facts set forth above, is not authorized by any statute of the State of North Carolina and is repugnant to the specific provisions of Article XIV, section 3, of the North Carolina Constitution, which states in language no man can misunderstand that the legislative power is supreme over the public purse. Judge McLean's judgment is void, and is

Reversed.