[No. 40108.    En Banc.    February 26, 1970.]

*In the Matter of the Application for a Writ of Habeas Corpus* of ELWOOD JOSEPH HONORE, *Appellant,* v. THE WASHINGTON STATE BOARD OF PRISON TERMS AND PAROLES, *Respondent.**

*Reported in 466 P.2d 485.

*John M. Junker* and *Michael H. Rosen,* for appellant.

*Lincoln E. Shropshire, F. James Gavin,* and *Lee Rickabaugh,* for respondent.

*The Attorney General* and *Paul J. Murphy, Assistant,* amici curiae.

HAMILTON, J.—In 1963, petitioner-appellant, Honore, represented by counsel at the time, entered a plea of guilty to the crime of grand larceny and was sentenced and committed to the state penitentiary. In 1966, the Washington State Board of Prison Terms and Paroles, granting him parole from the penitentiary, released Honore to the custody of federal authorities pursuant to a detainer previously lodged by such authorities. Thereafter, Honore was confined in the federal penitentiary at McNeil Island, Washington, until his release in March, 1967. In keeping with the terms and conditions of his state parole, the Board of Prison Terms and Paroles reasserted supervisory authority over him, to which he acceded. In August, 1967, alleging that Honore had violated conditions of his parole, the board rescinded his parole, issued a parole warrant, and returned him to the state penitentiary where he now is.

Thereafter, Honore filed his petition for a writ of habeas corpus with the Superior Court for Yakima County, the sentencing court, alleging, as the basis for the relief sought, that the state correctional authorities had lost jurisdiction over him when they released him to the federal detainer. The superior court perceiving that the issue raised was one of first impression in this state and that there existed a division of authority elsewhere on the question, appointed counsel to represent Honore, held a hearing, considered the

briefs and arguments of counsel, and thereupon denied the petition. Appointed counsel were then permitted to withdraw from the case.

Honore filed notice of appeal and requested permission to proceed in forma pauperis. The trial court granted his request after finding that the "petitioner is indigent and . . . his appeal is not patently frivolous." This relief was afforded pursuant to RCW 7.36.250, which provides:

> Any person entitled to prosecute a writ of habeas corpus who, by reason of poverty is unable to pay the costs of such proceeding or give security therefor, may file in the court having original jurisdiction of the proceeding an affidavit setting forth such facts and that he believes himself to be entitled to the redress sought. Upon the filing of such an affidavit the court may, if satisfied that the proceeding or appeal is instituted or taken in good faith, order that such proceeding, including appeal, may be prosecuted without prepayment of fees or costs or the giving of security therefor.

Subsequently, the trial court ordered preparation of a statement of facts and transcript on appeal at public expense but denied Honore's motion for appointment of counsel to aid him with his appeal. In this latter respect, the trial court was following the theme of our decision in *Summers v. Rhay*, 67 Wn.2d 898, 410 P.2d 608 (1966).

Honore then moved this court for appointment of appellate counsel. This motion was set down for en banc hearing with counsel from the American Civil Liberties Union and the University of Washington Law School appearing in support of petitioner's motion, the Prosecuting Attorney for Yakima County representing respondent, and the state Attorney General's office appearing amicus curiae. Following oral argument, and in order to expedite the appeal, we issued an order providing in part:

> (2) The Superior Court of Yakima County determined that petitioner was an indigent, that his application was not frivolous, that a hearing upon the merits of his application should be held, and that petitioner was entitled to counsel at public expense;
> . . .

(6) The issue raised by petitioner's allegations and his appeal is one of law and counsel would be of assistance to petitioner in properly presenting his contention and would be of substantial aid to the court in the orderly disposition of the matter; Now, Therefore,

IT IS ORDERED That the cause be remanded to the Superior Court of Yakima County for the appointment of counsel to represent petitioner on his appeal; and

IT IS FURTHER ORDERED That the matter of payment of costs and attorney fees to appointed counsel will be determined by an opinion to follow this order.

Before we turn to the matter of compensation, we deem it desirable to clarify the basis of our order directing the superior court to provide appointed counsel to assist Honore, as an indigent, in the prosecution of his appeal from the denial of his nonfrivolous application for habeas corpus.

The remedy of habeas corpus found early expression in the Magna Carta, and was carried and embedded into our federal constitution by this nation's Founding Fathers. In the context of imprisonment in connection with criminal offenses, the writ of habeas corpus provides a speedy device to test the constitutionality of the detention. To insure its availability, both the federal constitution and this state's constitution prohibit suspension of the writ except under extreme circumstances. U. S. Const. art. 1, § 9; Const. art. 1, § 13. In this state, the writ, by legislative enactment, with certain reservations, is available to "Every person restrained of his liberty under any pretense whatever, . . ." RCW 7.36.010. Although, as heretofore indicated, the writ is frequently invoked as a method of challenging the constitutional validity of confinement growing out of criminal charges, habeas corpus proceedings have quite consistently been characterized as civil proceedings—*i.e.*, a proceeding to enforce the civil right of personal liberty—as distinguished from criminal proceedings. *Ex Parte Tom Tong*, 108 U.S. 556, 27 L. Ed. 826, 2 S. Ct. 871 (1883); *Fisher v. Baker*, 203 U.S. 174, 51 L. Ed. 142, 27 S. Ct. 135 (1906); *State v. Fenton*, 30 Wash. 325, 70 P. 741 (1902); *State ex rel. Roberts v. Superior Court*, 32 Wash. 143, 72 P. 1040 (1903); *Ludwick v. Webb*, 23 Wn.2d 115, 160 P.2d 504

(1945); *Summers v. Rhay, supra; Little v. Rhay,* 68 Wn.2d 353, 413 P.2d 15 (1966). In this latter vein, however, it is appropriate to note that, despite its earlier pronouncements, the United States Supreme Court, in denying applicability of the discovery provisions of the civil rules of procedure to habeas corpus proceedings, has observed that the label "civil" is inexact when considered in connection with postconviction litigation and that more appropriately the remedy in such context is unique, if not somewhat *sui generis. Harris v. Nelson,* 393 U.S. 814, 22 L. Ed. 2d 281, 89 S. Ct. 1082 (1969.)

By way of further preface, we would inject here the observation that, in instances where an indigent state prisoner's petition for a writ of habeas corpus satisfactorily appears to be nonfrivolous, urged in good faith, and deserving of an evidentiary hearing to resolve significant factual or legal issues, it is not an unprecedented procedure for the trial court before which the hearing is held to appoint counsel to assist the petitioner in the presentation of his claims at the hearing. This has been done either at the instance of this court or on the initiative of the trial court, as in the instant case, in the exercise of judicial discretion. *E.g.,* Mocabee v. Rhay, Supreme Court Cause No. 37627, Order for Appointment of Counsel, February 8, 1965; *Mason v. Cranor,* 42 Wn.2d 610, 257 P.2d 211 (1953). And, we have long held, in keeping with RCW 7.36.250 and Rules on Appeal 14 and 56, RCW vol. 0, that an appeal lies from a superior court denial or dismissal of an application for a writ of habeas corpus. *In re Foye,* 21 Wash. 250, 57 P. 825 (1899); *In re Baker,* 21 Wash. 259, 57 P. 827 (1899); *In re Sylvester,* 21 Wash. 263, 57 P. 829 (1899). This right of appellate review, with some limitations, has also been afforded to impoverished penal petitioners pursuing a nonfrivolous application at public expense. *Mason v. Cranor, supra.*

Against this background, then, we turn to the question posed by petitioner-appellant's motion, that is, whether as a matter of right or of discretion, as an indigent prisoner, he

is entitled to have counsel appointed to assist in the prosecution of his appeal. Implicit, of course, in the query presented is the question of the superior court's power and duty to appoint counsel to assist an indigent prisoner at the evidentiary hearing stage of a nonfrivolous petition.

The United States Supreme Court has not as yet spoken directly upon the particular questions here involved. Of those appellate courts which have, the majority have tended to deny the existence of a constitutional right compelling appointment of counsel for an indigent prisoner engaged in pursuing a postconviction remedy. While the reasons given for this conclusion are occasionally more refined, most courts, as we recently did, have simply said that the constitutional guarantees of counsel contained in the sixth amendment to the United States Constitution and similar state constitutional provisions are limited to "criminal prosecutions" and do not extend to postconviction procedures, such as habeas corpus, which are characterized as "civil proceedings." *See, e.g., Summers v. Rhay, supra; Foster v. United States,* 345 F.2d 675 (6th Cir. 1965); *Cullins v. Crouse,* 348 F.2d 887 (10th Cir. 1965); *Dutton v. Eyman,* 95 Ariz. 96, 387 P.2d 799 (1963), *cert. denied,* 377 U.S. 913, 12 L. Ed. 2d 182, 84 S. Ct. 1176 (1964); *Loftis v. Amrine,* 152 Kan. 464, 105 P.2d 890 (1940); *Right to aid of counsel in application or hearing for habeas corpus,* Annot., 162 A.L.R. 922 (1946).

Nevertheless, some of these same courts also hold that counsel may be appointed at the court's discretion in those instances where the application is nonfrivolous and the court would find it helpful to have counsel assist in the proceeding. *Foster v. United States, supra; Cullins v. Crouse, supra.* And, *see Baker v. United States,* 334 F.2d 444 (8th Cir. 1964); *Echols v. State,* 276 Ala. 489, 164 So. 2d 486 (1964); *Austin v. State,* 91 Idaho 404, 422 P.2d 71 (1966); *Darnell v. Peyton,* 208 Va. 675, 160 S.E.2d 749 (1968). Indeed, some go so far as to hold that the court's discretion is abused if the indigent applicant for postconviction relief is not furnished counsel when he presents an

issue which is nonfrivolous and nonrepetitive. *United States ex rel. Marshall v. Wilkins,* 338 F.2d 404 (2d Cir. 1964); *United States ex rel. Wissenfeld v. Wilkins,* 281 F.2d 707 (2d Cir. 1960); *Dillon v. United States,* 307 F.2d 445 (9th Cir. 1962); *Anderson v. Heinze,* 258 F.2d 479 (9th Cir.), *cert. denied,* 358 U.S. 889, 3 L. Ed. 2d 116, 79 S. Ct. 131 (1958); *Harper v. State,* 201 So. 2d 65 (Fla. 1967); *People ex rel. Williams v. LaVallee,* 19 N.Y.2d 238, 225 N.E.2d 735 (1967). *Cf. Carter v. State,* 199 Kan. 290, 428 P.2d 758 (1967). In this connection they reason that a right to a hearing means a right to a meaningful hearing and that where an issue is not frivolous and nonrepetitive, a meaningful hearing on such issue cannot be had without counsel.

Tangentially, the United States Supreme Court took note of the present state of the law in this area of postconviction proceedings in *Johnson v. Avery,* 393 U.S. 483, 21 L. Ed. 2d 718, 89 S. Ct. 747 (1969), a case wherein the court held that a state could not constitutionally forbid "jailhouse lawyers" from assisting fellow prisoners in preparing and researching applications for habeas corpus relief so long as the state did not provide some reasonable alternative means of assistance. In passing, the court observed:

> In most federal courts, it is the practice to appoint counsel in post-conviction proceedings only after a petition for post-conviction relief passes initial judicial evaluation and the court has determined that issues are presented calling for an evidentiary hearing. *E. g., Taylor v. Pegelow,* 335 F. 2d 147 (C. A. 4th Cir. 1964); *United States ex rel. Marshall v. Wilkins,* 338 F. 2d 404 (C. A. 2d Cir. 1964). See 28 U. S. C. § 1915(d); R. Sokol, A Handbook of Federal Habeas Corpus 71-73 (1965).
>
> It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief. See, *e. g., Barker v. Ohio,* 330 F. 2d 594 (C. A. 6th Cir. 1964). Accordingly, the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with

such help as he can obtain within the prison walls or the prison system.

(Footnote omitted.)

In the case before us, however, counsel on behalf of Honore do not suggest that such constitutional guarantees of counsel as are found in the sixth amendment to the United States Constitution should be construed to cover habeas corpus proceedings initiated by indigent prisoners. Rather, they strenuously argue that to deny an indigent state convict the assistance of counsel, either at an appropriate state evidentiary hearing or on appeal from a judgment denying habeas corpus relief after such a hearing, denies the indigent equal protection of the law in contravention of the equal protection clause of the fourteenth amendment to the United States Constitution. They assert this is particularly so when the application for habeas corpus relief is neither frivolous nor repetitive and is urged in good faith.

In this connection they point to the constitutional and statutory right of any state prisoner to seek habeas corpus relief in the courts and to the recognized right of appeal from a denial of such relief, and observe that those who can afford to hire an attorney have a right to be heard through counsel. Thus, they contend, an indigent prisoner, who may be virtually illiterate, cut off from objective outside assistance, and hampered by limited research facilities, is invidiously discriminated against when, without counsel, he is pitted at the evidentiary hearing or appellate level against the legal resources of the state in a contest wherein the validity of state imposed imprisonment is at issue. They conclude that this amounts to a denial of equal protection of the law under the principles laid down in *Griffin v. Illinois,* 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585, 55 A.L.R.2d 1055 (1956), and *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963).

In *Griffin v. Illinois, supra,* it appeared that Illinois law gave all convicted of crime a right of appeal. Under the then prevailing rules, it was necessary that such an appel-

lant furnish the reviewing court with a stenographic transcript of the trial proceeding, which the appellant had to pay for. The indigent convict, therefore, was unable to obtain adequate appellate review since he was financially unable to supply the transcript. While observing that the states were not constitutionally bound to provide a right of appellate review of criminal convictions, the court held that once such a right was granted it could not be conditioned in such a way as to discriminate against indigent convicts solely because of their poverty. The court concluded that because the Illinois procedure denied the impoverished full and adequate appellate review of a conviction only because they could not afford a transcript, there arose a violation of the equal protection clause of the fourteenth amendment to the United States Constitution. Although the court stopped short of requiring the state to furnish a full transcript to every indigent criminal appellant in every case, it did rule that Illinois was constitutionally bound at public expense to furnish an indigent criminal appellant with a transcript sufficient in kind and extent to permit an adequate and meaningful appellate review of alleged errors. See also *Draper v. Washington,* 372 U.S. 487, 9 L. Ed. 2d 899, 83 S. Ct. 774 (1963); *Eskridge v. Washington State Bd. of Prison Terms & Paroles,* 357 U.S. 214, 2 L. Ed. 2d 1269, 78 S. Ct. 1061 (1958); and *Entsminger v. Iowa,* 386 U.S. 748, 18 L. Ed. 2d 501, 87 S. Ct. 1402 (1967).

In *Douglas v. California, supra,* California law granted persons convicted of felonies an appeal as of right to the state's intermediate appellate courts and permitted those courts to appoint counsel on appeal for indigent appellants. The California rule also permitted the intermediate appellate court to deny a request for appointed appellate counsel if, after an independent examination of the record, the intermediate appellate court concluded that counsel would be of no assistance to the court or to the indigent appellant. This procedure was followed in denying appellant Douglas' request for appointed counsel. Relying on *Griffin,* the United States Supreme Court held there was a denial of equal protection, stating at 357:

The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between "possibly good and obviously bad cases," but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself.

The court then went on to hold that California was constitutionally required to furnish, on request, an indigent criminal appellant with appointed counsel on his *first appeal* before its intermediate courts could rule on the merits of the appeal.

Respondent, Yakima County, suggests that *Griffin* and *Douglas* are distinguishable, since both cases involve direct appeals rather than, as here, postconviction collateral attacks and because both cases involve the first appeal as of right rather than situations where there has already been, or conceivably could have been, an opportunity for a full appellate review of an indigent's conviction. However, in *Burns v. Ohio,* 360 U.S. 252, 3 L. Ed. 2d 1209, 79 S. Ct. 1164 (1959), the United States Supreme Court held that the principles of *Griffin* precluded Ohio from denying a second appellate review solely upon the basis of an indigent's inability to pay the required filing fee. And, in a series of comparatively recent cases, the court has ruled the *Griffin* principles applicable to postconviction proceedings. *Smith v. Bennett,* 365 U.S. 708, 6 L. Ed. 2d 39, 81 S. Ct. 895 (1961); *Lane v. Brown,* 372 U.S. 477, 9 L. Ed. 2d 892, 83 S. Ct. 768 (1963); *Long v. District Court of Iowa,* 385 U.S. 192, 17 L. Ed. 2d 290, 87 S. Ct. 362 (1966), *(per curiam)*; *Gardner v. California,* 393 U.S. 367, 21 L. Ed. 2d 601, 89 S. Ct. 580 (1969).

Although it would appear that the court deliberately and specifically sidestepped the issue of right to counsel in col-

lateral proceedings in its consideration of the circumstances in *Long v. District Court of Iowa, supra,* the court did observe in *Lane v. Brown, supra,* where a transcript of a postconviction coram nobis hearing was deemed constitutionally required for adequate appellate review, as follows at 484:

> The present case falls clearly within the area staked out by the Court's decisions in *Griffin [Griffin v. Illinois,* 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956)], *Burns [Burns v. Ohio,* 360 U.S. 252, 3 L. Ed. 2d 1209, 79 S. Ct. 1164 (1959)], *Smith [Smith v. Bennett,* 365 U.S. 708, 6 L. Ed. 2d 39, 81 S. Ct. 895 (1961)], and *Eskridge [Eskridge v. State Bd. of Prison Terms & Paroles,* 375 U.S. 214, 2 L. Ed. 2d 1269, 78 S. Ct. 1061 (1958)]. To be sure, this case does not involve, as did *Griffin,* a direct appeal from a criminal conviction, but *Smith* makes clear that the *Griffin* principle also applies to state collateral proceedings, and *Burns* leaves no doubt that the principle applies even though the State has already provided one review on the merits.

The development of the *Griffin* principle as applied to direct appeal and collateral attack proceedings has been parallel, although the latter proceedings have lagged behind a few years.

In 1956, *Griffin* held that indigent criminal appellants were entitled to a free and adequate transcript in prosecuting a direct appeal. In 1963, *Lane v. Brown, supra,* held that indigent prisoners were entitled to a free and adequate transcript to aid them in prosecuting an appeal from a denial of a writ of error coram nobis. This rule was extended to include indigents appealing from a denial of habeas corpus relief in 1966 by *Long v. District Court of Iowa, supra.*

In 1959, *Burns v. Ohio, supra,* held that impoverished criminal appellants were entitled to prosecute a direct appeal from their convictions without prepayment of filing fees. In 1961, *Smith v. Bennett, supra,* granted the same right to indigent prisoners prosecuting an appeal from a denial of habeas corpus relief.

All of these cases, as does *Douglas,* rely on the *Griffin* principle as the dispositive point. As yet there has been no United States Supreme Court ruling in the postconviction attack area to match *Douglas,* and seemingly that court has purposely avoided the issue in *Lane v. Brown, supra,* and *Long v. District Court of Iowa, supra.* On the other hand, there is little to indicate that the court, when inescapably confronted with the question, would view the *Griffin* equal protection principle as applied to the right to counsel issue any differently in the collateral attack context than from the direct review context.

Both the Attorney General, as amicus curiae, and Yakima County, as respondent, urge that a right to counsel, in constitutional dimensions, need not and should not be granted in habeas corpus proceedings, because, as they point out, such applications for relief are often frivolous and can be submitted over and over again.

The first contention is often advanced in the context of an argument concerning the equal protection clause's applicability to collateral attack procedures. And it has just as often been rejected by the United States Supreme Court in the *Griffin* line of cases. This court, as is the United States Supreme Court, is acutely aware that habeas corpus petitions are frequently frivolous. However, frivolity is not solely within the domain of the impoverished. The rich as well as the poor can also be afflicted with frivolity. The United States Supreme Court has never suggested that there is an equal protection right to state aid in the prosecution of frivolous appeals. *Draper v. Washington, supra.* Neither would it seem likely that that court would hold that merely because a wealthy person, at his own expense, may wish to fruitlessly and repetitively belabor a frivolous issue by postconviction process, such a circumstance would give rise to an equal protection privilege on the part of an indigent to pursue the same course at public expense. That court has, however, pointed out that the proper solution is to discriminate against all frivolous petitions, rather than to discriminate against indigents by denying them appropriate assistance in the prosecution of nonfrivolous appeals.

*Douglas v. California, supra.* This disposition of all frivolous petitions, whether from rich or poor, can be accomplished without the aid of appointed counsel either at the hearing or appellate level by appropriate and timely motion interposed by the state.

The second argument is primarily a quarrel with the rules of law which permit repeated applications for habeas corpus relief. It has no particular relevance to the issue of whether indigents should be afforded counsel to assist in prosecuting, at the hearing or appellate level, a nonfrivolous and nonrepetitive application for postconviction relief. When there has been a prior denial, after appropriate judicial consideration, on grounds for collateral relief which are raised in a subsequent application for collateral relief, it is not a denial of equal protection to deny the second application summarily and without appointment of counsel for the applicant. *Cf. Sanders v. United States,* 373 U.S. 1, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963).

In short, and with due regard to other arguments advanced by respondent and amicus curiae, we perceive no tenable theory upon which to predicate a conclusion that a judicial refusal to furnish, on request, appointed counsel to an indigent state prisoner prosecuting, at the hearing or first appellate level, a postconviction action which presents an issue that is urged in good faith, is not frivolous or repetitive and which by its nature and significance suggests the desirability of professional legal assistance, can be characterized as compatible with the equal protection principles enunciated in the *Griffin* line of cases. *Cf. People v. Shipman,* 62 Cal. 2d 226, 397 P.2d 993 (1965); *Duncan v. Robbins,* 159 Me. 339, 193 A.2d 362 (1963); *People v. Hughes,* 15 N.Y.2d 172, 204 N.E.2d 849 (1965), *(per curiam), cert. denied,* 384 U.S. 980, 16 L. Ed. 2d 691, 86 S. Ct. 1881 (1966); *State v. Randolph,* 32 Wis. 2d 1, 144 N.W.2d 441 (1966).

At this point, we pause briefly, to point out that *Riggins v. Rhay,* 75 Wn.2d 271, 450 P.2d 806 (1969), wherein we rejected an equal protection argument advanced with respect to the right to counsel in the administrative setting of a parole revocation hearing, is distinguishable. We were

there considering a statutory administrative proceeding in which the parolee was not opposed by counsel for the state and before which the parolee himself was the best evidence of his prospects of rehabilitation. In the instant situation, however, we are concerned with a postconviction procedure afforded to a state prisoner by constitutional as well as statutory provision, which must be pursued in a court of law, the granting or denial of which sometimes rests upon significant extraneous legal or evidentiary matters which must be researched, marshalled, and intelligibly presented either at an evidentiary hearing or at the appellate level if the applicant's good faith contentions are to be fairly presented and considered. It is within the context of such a judicial proceeding that the *Griffin* line of decisions find their expression.

As in *Griffin* and *Douglas*, the habeas corpus petitioner or appellant is seeking relief before a judicial tribunal. He is imprisoned by virtue of a criminal conviction, the legality of which custody he is entitled to challenge. He is normally opposed by the state which is represented by counsel. He is before a judicial tribunal where he would be heard through counsel, if he could afford counsel, before the court passes on the merits of his application. The *Griffin* principle has been extended to other aspects of postconviction proceedings. Under these circumstances it would appear to be an exercise in sophisticated semantics to hold in one breath that the court could provide an indigent petitioner with counsel at the court's discretion, and in the next breath refuse to accept the patent equal protection overtones of the *Griffin* line of cases.

■ On this phase of the case we, therefore, conclude that logic and the more persuasive authority compel us to hold that an indigent state prisoner seeking habeas corpus relief is entitled, under the equal protection clause of the fourteenth amendment to the United States Constitution, to be furnished appointed counsel, upon request, to assist him in prosecuting his petition at the evidentiary hearing stage and/or at the first appellate level when (1) his petition is

urged in good faith; (2) his petition raises significant issues which, when considered in the light of the state's responsive pleadings or the evidence adduced at an evidentiary hearing, are neither frivolous nor repetitive; and (3) such issues by their nature and character indicate the necessity for professional legal assistance if they are to be presented and considered in a fair and meaningful manner.

Former decisions of this court, including *Summers v. Rhay*, 67 Wn.2d 898, 410 P.2d 608 (1966), which import an inconsistency with this conclusion, are modified accordingly.

There remains for disposition the matter of payment of pertinent fees or costs and attorney fees and expenses to appointed counsel under the standards and rules we hereinabove adopt.

There are no court rules precisely applicable to the questions presented on this phase of the case; however, the following presently existing statutes are pertinent, and provide:

> Any person entitled to prosecute a writ of habeas corpus who, by reason of poverty is unable to pay the costs of such proceeding or give security therefor, may file in the court having original jurisdiction of the proceeding an affidavit setting forth such facts and that he believes himself to be entitled to the redress sought. Upon the filing of such an affidavit the court may, if satisfied that *the proceeding or appeal* is instituted, or taken in good faith, order that such proceeding, *including appeal*, may be prosecuted without prepayment of fees or costs or the giving of security therefor.

(Italics ours.) RCW 7.36.250.

> Whenever a defendant shall be arraigned or first appear before a court, magistrate or justice of the peace upon the charge that he has committed any felony, and the defendant has requested the court to appoint counsel to assist in his defense, and shall by his own oath or such other proof as may be required satisfy the court that he is unable, by reason of poverty, to procure counsel, the court shall appoint counsel, not exceeding two, for such defendant. Counsel so appointed shall be paid a reasonable amount as attorney's fees together with reimburse-

ment of actual expenses necessarily incurred *upon the court's order by the county in which such proceeding is had: Provided, That this section shall also apply to such other proceedings and at such other time as may be constitutionally required.*

(Italics ours.) RCW 10.01.110.

When a judge of the superior court, in the exercise of his discretion authorizes expenditure of funds on behalf of an individual *criminal defendant* who is unable by reason of poverty to procure counsel to perfect a review by the supreme court, and where the court re-appoints counsel representing the defendant at the trial or designates new counsel to represent the defendant in securing this review, all costs necessarily incident to the proper consideration of the appeal by the supreme court including preparation of the record, appropriate counsel fees to be determined by the supreme court, and actual travel expenses of counsel for appearance in the supreme court, shall be paid by the state, upon satisfaction of requirements established by supreme court rules and submission of appropriate vouchers to the clerk of the supreme court, from funds specifically appropriated by the legislature for that purpose.

(Italics ours.) RCW 10.01.112.

Under these statutes, we consider first the matter of fees, costs and attorneys' compensation which may, under our ruling, accrue as an incident to an evidentiary hearing either originating in the superior court or being conducted therein pursuant to a remand under pertinent court rules, reference in this latter vein being to the former ROA 56(4)(5).[1]

█ It is at once apparent, and in keeping with our earlier pronouncement in *Mason v. Cranor, supra,* our current practice and the standards and rules herein adopted, that RCW 7.36.250 and the proviso attached to RCW

---

[1] "(4) The Chief Justice may order the prosecution of a *habeas corpus* proceeding without cost in cases where it is made to appear that the petitioner is a pauper, and the proceeding is in good faith and not repetitive.

"(5) Where the answer raises an issue of fact which cannot be determined from the face of the record, the Chief Justice shall refer the proceeding to a superior court for hearing." ROA 56(4)(5).

10.01.110, when read together, are sufficiently broad in scope to authorize the superior court, in appropriate habeas corpus proceedings before it originally or on remand, to appoint counsel and order payment by the county of (a) such court costs and incidental fees as are found by the court, in the exercise of its wisdom, to be required and reasonably essential to the evidentiary hearing involved; (b) such attorneys' fees, together with necessary expenses incurred by counsel, as the superior court, in its discretion, finds reasonable under all of the circumstances; and (c) the costs of transcribing a statement of facts and the printing of briefs adequate to reach claimed errors in the event of an appeal from the superior court's determination of the application.

We come, then, to the more difficult problem, that is, whether counsel appointed to represent an indigent state prisoner on his first appeal from a superior court disposition of his petition for habeas corpus can be, under existing law, compensated for his services, and if so by what public agency.

■  There are no prevailing court rules precisely applicable to these questions, and the only current statute providing for compensation of appointed counsel representing an indigent person convicted of crime on appeal is RCW 10.01.112, quoted above, enacted in 1965. It is to be noted, however, that RCW 10.01.112 does not have attached to it the proviso found in RCW 10.01.110, which permits application of its provisions to "such other proceedings and at such other times as may be constitutionally required." Without this proviso, the statute, therefore, concerns itself only with "criminal defendants."

We have held that an indigent state prisoner appealing from a judgment denying his application for a writ of habeas corpus is not a "criminal defendant" within the contemplation of RCW 10.01.110 and RCW 10.40.030, and by indirection within the meaning of RCW 10.01.112. *Summers v. Rhay, supra.* What we have already said concerning the proviso of RCW 10.01.110, and its application to habeas corpus petitions coming within the purport of our rules

relative to the appointment of counsel announced herein, modifies our holding in *Summers v. Rhay, supra,* with respect to that particular statute; however, it cannot overcome the absence of such a proviso in RCW 10.01.112.

The rationale which leads to the conclusion that a petitioner in a habeas corpus proceeding is not a "criminal defendant" is predicated upon the concept that such a remedy is not exclusively available to persons who are in some form of custody as a result of criminal proceedings. It is, for example, available as a method of obtaining or determining custodial rights with respect to children and persons under mental disability. RCW 7.36.020. *Schreifels v. Schreifels,* 47 Wn.2d 409, 287 P.2d 1001 (1955); *Soderquist v. Keller,* 21 Wn.2d 1, 149 P.2d 528 (1944). Thus, the notion that habeas corpus is a "civil proceeding" rather than a "criminal proceeding," cannot and should not be cavalierly abandoned, although it may be otherwise looked upon as "unique" in the field of postconviction remedies. We are inclined, therefore, to adhere to that portion of *Summers v. Rhay, supra,* which indirectly holds that an applicant for habeas corpus relief is not a "criminal defendant" within the contemplation of RCW 10.01.112.

We are, accordingly, faced with a situation in which neither statute nor court rule specifically provides for compensation of counsel appointed to perfect an indigent state prisoner's appeal from a denial of habeas corpus relief. The majority rule, under such circumstances, is that counsel appointed to represent an indigent has no right to compensation from the public treasury. *Representing Indigent— Compensation,* Annot., 21 A.L.R.3d 819. Three states long have held to the contrary, with a fourth recently joining. *Hall v. Washington County,* 2 Greene 473 (Iowa 1850); *Webb v. Baird,* 6 Ind. 13 (1854); *Carpenter v. County of Dane,* 9 Wis. 274, 9 Vilas & Bryant 249 (1859); and *State v. Rush,* 46 N.J. 399, 217 A.2d 441, 21 A.L.R.3d 804 (1966).

In favor of the majority rule, it is argued that to serve the cause of justice on behalf of an indigent is a professional honor for which an appointed counsel need not and ought not demand compensation, *Arkansas County v. Free-*

*man & Johnson,* 31 Ark. 266 (1876); *Wayne County v. Waller,* 90 Pa. 99 (1879); that such gratuitous service is a duty imposed by tradition, the Canons of Professional Ethics, and the attorney's oath and is a price paid by the attorney for the privileges attaching to his profession, *Arkansas County v. Freeman & Johnson, supra; State v. Clifton,* 247 La. 495, 172 So. 2d 657 (1965); *Ruckenbrod v. Mullins,* 102 Utah 548, 133 P.2d 325, 144 A.L.R. 839 (1943); that gratuitous service may be required of an attorney because representation of an indigent is a duty incident to his station as an officer of the court charged with the administration of justice and there is no constitutional requirement that every public official be paid for his services, *Jackson v. State,* 413 P.2d 488 (Alaska 1966); *Warner v. Commonwealth,* 400 S.W.2d 209 (Ky.), *cert. denied,* 385 U.S. 858, 17 L. Ed. 2d 85, 87 S. Ct. 108 (1966); that courts have no power over public funds collected for public purposes absent legislative authorization, *Commonwealth v. Burke,* 426 S.W.2d 449 (Ky. 1968); *State v. Davis,* 270 N.C. 1, 153 S.E.2d 749, *cert. denied,* 389 U.S. 828, 19 L. Ed. 2d 84, 88 S. Ct. 87 (1967); and that requiring an attorney to render gratuitous service on behalf of an indigent is not a taking of his property for public purposes without just compensation contrary to constitutional provisions, *United States v. Dillon,* 346 F.2d 633 (9th Cir. 1965), *cert. denied,* 382 U.S. 978, 15 L. Ed. 2d 469, 86 S. Ct. 550 (1966).

In support of the minority rule, it is variously argued, particularly in the light of expanding modern concepts in the field of criminal law, embracing as they do an increase in the volume of assignments as well as the extent of the duties imposed by an assignment, that the representation of the indigent on court appointment can no longer be considered an honorary duty, but instead has become an extremely heavy and overbalanced burden which becomes increasingly unfair to impose upon the profession alone. *Webb v. Baird, supra; Warner v. Commonwealth, supra; State v. Rush, supra.*

■  This court has faced the issue under discussion before. After a careful consideration of many of the argu-

ments advanced pro and con, we adopted the majority rule, holding that, absent an authorizing statute, counsel appointed to represent an indigent in a criminal matter could not be compensated from the public treasury. *Presby v. Klickitat County,* 5 Wash. 329, 31 P. 876 (1892). Since that time, statutes enabling payment of compensation at the superior court level and in criminal appeals have been enacted, as we have heretofore noted. However, both before and after the enactment of RCW 10.01.112, as it now stands without the proviso of RCW 10.01.110, we have held that there was no statutory authority for payment of counsel appointed to represent, on appeal, an indigent habeas corpus petitioner denied relief in the superior court. *Hoy v. Rhay,* 54 Wn.2d 508, 342 P.2d 607 (1959), *vacated and remanded on other issues,* 364 U.S. 279, 4 L. Ed. 2d 1719, 80 S. Ct. 1609 (1960); and *Summers v. Rhay, supra.*

We are acutely aware, however, that, under prevailing concepts in the field of the administration of criminal justice, the ever increasing requirements for legal representation of indigents on appeal in the field of criminal law, in the postconviction area, in the juvenile delinquency arena, and in related civil commitment situations are rapidly imposing an extremely heavy and time consuming burden upon the legal profession. This being so, it follows that to require an attorney to process an appeal without any prospect of compensation will possibly not only tend to detract from the quality of his service to the indigent and to the court, but might ultimately lead to a scarcity of counsel willing and able to accept appointment. That the legislature is cognizant of these factors is evident from the passage of RCW 10.01.110 and 10.01.112, as well as the effort extended in the 41st regular and special sessions of 1969 to amend RCW 10.01.112 in such a fashion as would bring it into conformity with the proviso appended to RCW 10.01.110. Although the proposed amendment failed to pass both houses due to the crush of other, and perhaps graver, measures, the probability exists that appropriate enabling legislation could be forthcoming in the not too distant future.

In the light of these circumstances, we are inclined to modify our prior holdings with respect to the right to compensation on the part of counsel appointed by the court to represent an indigent state prisoner on a nonfrivolous appeal from a superior court disposition of a writ of habeas corpus.

Accordingly, we now hold that (1) an attorney who is so appointed and prosecutes the appeal is entitled to compensation for his services from public funds; (2) the amount of compensation in each case shall, upon appropriate application by the appointee, be fixed by the court hearing the appeal; and (3) pending the enactment of enabling legislation and the provision of the requisite appropriations, payment of such compensation will of necessity have to be secured through the process of filing a claim with the legislature.

It is so ordered.

HUNTER, C. J., ROSELLINI, NEILL, and McGOVERN, JJ., concur.

HALE, J. (concurring in the result only)—The court, I think, implies much more than it says and only hints at what it has in mind. To me, the opinion conveys the idea that, even though the petitioner in habeas corpus has no right to counsel at public expense, his counsel does have an enforceable right to compensation, and that it has been denied solely because the legislature did not provide the money. Despite an acknowledgment that the state has not appropriated or authorized the appointment of counsel at public expense for inmates of penal institutions seeking release under habeas corpus, the court, nevertheless, suggests that counsel apply to the legislature for payment, and the legislature in good conscience should pay the bill. I do not concur in this recommendation. I think it a questionable expedient for this court to encourage counsel to file claims for their private relief with the legislature, particularly where the court has already declared such claims uncollectible.

Up to now, petitioner has been awarded a large measure of due process—at public expense. In 1963, under the advice and in the presence of his attorney, he pleaded guilty to a felony charge and was sentenced to the penitentiary. Released in 1966 on parole to the federal authorities for service of a federal sentence, he was in 1967 again released, this time from federal custody but still on state parole. Then, in August, 1967, on allegation of parole violation, the State of Washington rescinded his parole and returned petitioner to the penitentiary. In addition to the instant application for free counsel, petitioner has pending before this court his petition on the merits. Inasmuch as petitioner has been ably represented by counsel for the American Civil Liberties Union, without cost to either himself or the people of this state, I would leave matters where they now stand. If, as the opinion of the court points out, an inmate of the penitentiary has no constitutional right to counsel at public expense, and counsel has no enforceable rights to recover for his services from the state, I would not, as the majority seems to have done, judicially establish a twilight zone in the law where both client and attorney, while losing at law, prevail in fact.

The first place to look for answers to constitutional questions is in the constitution where it says that no funds can be disbursed from the public treasury except upon appropriation:

No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.

Const. art. 8 § 4 (amendment 11).

The legislature has neither authorized nor appropriated public money for compensation of counsel for inmates of

penal institutions in habeas corpus proceedings. Despite the court's recommendation that it do so, the legislature, in my opinion, should first make a comprehensive study of habeas corpus in this country, circa 1970, weighing the costs against the possible benefits. It may well be that, when the legislature learns of the profligate use of habeas corpus and the havoc it has wrought in the federal and state judicial systems, it may come up with remedies not yet dreamed of in the judges' philosophy.

As the court points out, the legislature has already looked into the question of due process of law in criminal cases and appropriated public funds to pay for appointed counsel in criminal appeals, *i.e.*, on behalf of an individual criminal defendant and then *only from funds specifically appropriated by the legislature for that purpose.* RCW 10.01.112. This section does not contemplate or permit furnishing counsel at public expense in civil cases. The legislature made it clear that it appropriated no money for non-criminal cases, including habeas corpus, and there exists no basis in law for making disbursements for that purpose at the present time.

Nearly all good things are subject to bad usage—including the writ of habeas corpus. Evolving as a device to liberate individuals held without authority of law, it has become, I think, by a process of judicial contortion, scarcely recognizable except for its name. Persistently proclaimed by the courts as no substitute for appeal, the writ, through a series of judicial mutations, has, nevertheless, become exactly what it is said not to be, a belated writ of appeal which now not only usurps to a serious degree the orderly and timely processes of appeal but has developed into a mechanism with which to bedevil, overburden and frustrate the orderly administration of the criminal law. Frequently characterized as the *great* writ, contemporary employment of it, I think, permits its label as the colossal writ or, perhaps more aptly, the universal writ. It can be made to serve the most frivolous and preposterous demands, and there is no end to it. Already out of hand, in my opinion,

the writ of habeas corpus is expanding so that the day is not far off when it may oust most writs known to the law, including perhaps that of garnishment.

Despite this runaway growth, there is one thing habeas corpus has not become—it is not a criminal proceeding. A criminal prosecution is a proceeding brought by the state or political subdivision in its own name for redress of a public offense. When petitioner, as an inmate of a penal institution, brings a suit against his wardens for the purpose of obtaining his discharge from confinement, he is not acting as a prosecuting attorney. Even the most enthusiastic exponents of habeas corpus among the judiciary must concede, I think, that the writ—however enlarged—cannot sensibly be expanded to embody among its attributes those of either a criminal complaint, information, presentment of a grand jury, or bill of indictment, or to vest in the petitioner the powers of a state's attorney heretofore exclusively reserved to qualified representatives of the sovereign. Petitioner initiated this petition; he may dismiss it if he chooses. He represents neither the state nor the people nor others. His stated grievance is personal to himself, in quest of a decree personal to himself.

Although I agree that occasionally such labels in law as civil or criminal may be misleading and ought not be an exclusive basis upon which to rest a rule, they are frequently a vital determinant. If the right to free counsel depends on whether one is defending a criminal charge or prosecuting a civil remedy, a sound classification of the kind of action is a vital precondition to enforcing the right. Calling a banana an orange, for example, simply because they are both classified as fruit, would be misleading where the applicable rule affects only one or the other and not both.

In nearly all habeas corpus petitions emanating from penal institutions, the petitioner is collaterally attacking a formal judgment of a court of competent jurisdiction, valid on its face and applicable particularly to the named petitioner. That judgment, unappealed from or affirmed on ap-

peal, during the term of imprisonment set forth should ordinarily, as a matter of law, constitute a good and sufficient answer to such petitions. Although *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R. 2d 733 (1963), frequently cited in what I consider the wanton employment of habeas corpus, does not report whether the judgment and sentence under attack affirmatively showed on its face a denial of counsel, the trial record did show a categorical demand for and a categorical refusal by the court to appoint counsel. *Gideon,* I think, holds no more than that a court is constitutionally without jurisdiction to impose a sentence for felony unless counsel has been waived, retained or appointed—a rule of undoubted constitutional law obtaining in this jurisdiction since 1854.

In the present case, the court acknowledges that petitions for habeas corpus coming out of our penal institutions are frequently frivolous, but I would point out further that such frivolity is neither carefree nor casual but extremely burdensome. It would be a good idea that legislatures and courts, knowing of this frivolity, undertake soon to devise fair but speedy and economical procedures for identifying the few claims which have substance to them and quickly dispose of those which are frivolous and without merit.

It is good that the constitutions be regarded as living charters, adaptable to changing times and conditions and that the writ of habeas corpus be recognized as an effective and useful writ in the preservation of individual freedom. And I would permit the writ to adapt to the times for change is an inexorable rule of life, and the law, as with nearly everything else, is caught up in it. But a change in the law should come about through rational and orderly development and shaped to meet the apparent needs of the individual and of an everchanging society.

Change in law may be good or it may be intrinsically bad. If it happens by accident rather than design, it will as in nature more likely be bad than good. Thus, the law should not be allowed to suffer by accident the kinds of mutations which, developing spontaneously in nature, in so

many instances turn out to be bad. In considering life and growth and change in law as well as in nature, one should not forget that cancer is a living and growing organism, too.

The damage inflicted on the judicial systems and thus upon the people of this country through judicial acceptance of the profligate employment of habeas corpus stems, in my view, from six distinct abuses and distortions of the writ:

1. The courts have erroneously allowed habeas corpus to become a substitute for a writ of appeal.

2. Habeas corpus has been proclaimed free of res judicata—a mistaken assumption that permits it to be litigated over and over again upon the same or different grounds.

3. The writ fosters a riotous duality between federal and state systems; it is frequently employed in one judicial system to review the judgments of another.

4. It has developed into a kind of perpetual postconviction, postappeal proceeding and as a wanton alternate for a postconviction remedial statute.

5. The writ now prevents finality in criminal judgments.

6. It is costly to the people, preempting a part of their treasury which could be put to better use.

These ideas, considered in greater detail, give rise to the following propositions:

1. Despite rock-bottom authority to the contrary, the writ of habeas corpus has in practice developed into a substitute for a writ of appeal. A seemingly inexorable process of judicial application has so distorted the writ that a convicted prisoner can now waive his constitutional right to appeal, wait until crucial witnesses against him are dead, dispersed, rendered incompetent by time, or placed in fear by the law's demonstrated inability to cope with dangerous criminals, and he may then employ the writ in both state and federal courts to relitigate the facts and constitutional premises upon which his conviction rested.

2. Next, although habeas corpus and other writs like it such as coram nobis are explicitly civil writs, the doctrine of res judicata, which universally applies to all civil and,

indeed, criminal cases as well, for some curious reason is said to have no application to it. Under current notions of constitutional due process, a prison inmate can file one petition for habeas corpus after another raising the same points repeatedly, or he can employ a stretch-out method and add a new claim to each succeeding petition ad infinitum. The courts give the nation and its component sovereign states no relief from this costly and debilitative form of harassment and the people no protection against this continual drain on their treasury. Nowhere, so far as I have been able to ascertain, has the profligate waste of public moneys and legal, judicial, police and administrative manpower engendered by this form of juridical perpetual motion been genuinely relieved by either the courts or legislatures.

3. The writ has created an ambivalence between the two judicial systems. Federal and state judiciary which once operated in reasonable harmony side by side now overlap, trespass upon and conflict with each other at all levels, largely, I think, because of the judiciary's inability in both systems to administer properly the writ of habeas corpus. The endless tug-of-war in criminal cases and habeas corpus proceedings between federal and state courts has, in my judgment, developed into a grave jurisdictional conflict and seriously endangered the public safety. Although in the field of commerce competition is said to be the life of trade, that maxim has little validity in the field of jurisprudence. When the law puts two vigorous judicial systems for the administration of criminal justice into competition and conflict with each other, the two forces are more apt to be disintegrating than strengthening. Thus, the writ of habeas corpus, a civil remedy now unfortunately tolerated as a substitute for appeal, has, I think, become a disintegrating force in the administration of the criminal law in the country. Under its present baneful usage, the wheels of justice can be and frequently are brought to a grinding halt as criminal cases shift back and forth at all levels between the federal and state systems. I would not disparage nor abridge the writ, but I would not let it run rampant either.

It should be restored by the courts to its formerly effective but sensible role unless, of course, the people through their legislative assemblies deliberately enlarge its offices by statute.

The writ should not be allowed as a substitute for appeal nor be relieved of the commonsense application of the rule of res judicata. With the plethora of due process now available—mostly at public expense—to anyone accused of crime, there is no reason why poor men and rich men alike should not be required to raise their claims of error on appeal and be held to have waived them if they do not do so. How or why the rule emerged that there is no limit to the number of times one can litigate the same or similar issues in a civil case is beyond comprehension.

I see no danger to individual freedom and much good to our free society if the writ is shorn of some of its now ephemeral qualities. Rare indeed is the case today where the accused in a felony prosecution has not been offered and has not utilized an abundance of due process before resorting to habeas corpus. He may first be taken before a justice of the peace or committing magistrate where he is advised of his constitutional rights and whatever additional privileges he may be said to have under *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), or, he may be charged directly by information or indictment. In either case, if he is without funds, counsel will be appointed for him at public expense.

When the complaint in justice court is superseded by information or indictment and the accused comes before the superior court for arraignment, counsel is appointed or existing counsel confirmed to serve at public expense, and the accused is allowed time to consider his plea. If he pleads not guilty to the charge but additionally not guilty by reason of mental irresponsibility, the court, at public expense, furnishes him with experts in the field of psychology and psychiatry to aid him in his defense. The State of Washington thus supplies the accused throughout all stages of a criminal case with professional assistance.

But due process has then just begun. It takes the unanimous concurrence of 12 jurors to find the defendant guilty and next he may move for a new trial or in arrest of judgment—and all professional services employed in these proceedings will be paid for by the public or required of the bar without compensation. Then, he may exercise his constitutional right to appeal and the public will supply him at the current rate of $1.20 per page with a verbatim record of such parts of the trial as may be relevant to any points on appeal he intends to raise. And the public pays his counsel to write his brief and argue his case on appeal, either to a court of appeals intermediately or to the highest court in the state, or perhaps both. The public also pays all typing and printing costs and the counsel's travel expense to and from the court where the appeal is argued.

But that is not the end of the due process of law afforded the accused. If his conviction is affirmed, he may seek a review by the Supreme Court of the United States, proceeding directly from the state court which affirmed his conviction on appeal. If the Supreme Court denies the application for review, or on review affirms the state court which heard the appeal, one would think that this would be an end to the case and that the accused had been afforded the full process of law due him. At that point, it would seem that the case had been fully and finally litigated and that the judgment had become final, and that the state had fully afforded the accused due process of law.

Such a surmise, however, would prove mistaken in the light of everyday experience, for with the denial of certiorari by the Supreme Court of the United States, the endless processes of habeas corpus begin. We reach not the end but a beginning—the beginning of a new and seemingly endless cycle of reviews. After denial of certiorari, the convicted felon can proceed by habeas corpus into the District Court of the United States and there litigate the very facts upon which his conviction was founded and affirmed by the highest courts of the state and the Supreme Court of the United States. He may also take a side trip simultaneously back

into the state courts by way of habeas corpus in the interest of exhausting state remedies. If a 1-judge federal district court makes a finding of fact in a habeas corpus proceeding that relief be allowed, that court, in the alternative, may order a new state trial or direct that the very judgment and sentence once affirmed on appeal by the highest court of the state and refused review by the United States Supreme Court be set aside and abrogated and that the petitioner be set free.

Although the state may appeal this decision, an appeal frequently gives rise to ineluctable and insoluble problems: Will the normal fears engendered among witnesses by the seeming impotence of our courts to deal with dangerous criminals shape their testimony? Will key witnesses or their lapsing memories survive the delays? Will time destroy or seriously deteriorate critical evidence? The state is put to a difficult choice, for it is no easy matter to determine so long after the trial whether to appeal the order in habeas corpus granting a new trial or to accept the district court decision and proceed with a new trial which on two or three earlier occasions had been denied by the highest courts.

But even if the federal district court denies habeas corpus relief and refuses a new trial, that does not end the matter. When the district court dismisses or denies the petition, the convicted felon, whose conviction has already been once, twice or thrice affirmed, may then appeal to the court of appeals and thence to the Supreme Court of the United States again arguing grounds which could well have been asserted at his trial and urged in his appeals years earlier. At this juncture with the second denial of certiorari by the United States Supreme Court, one would at long last conclude that due process of law would have been fully accorded the accused and he would settle down to a full acceptance of his fate.

But again this would be a mistaken surmise. The petitioner may repeat the whole process in both the state and federal court systems again and again ad infinitum, resur-

690

recting old or asserting new grounds each time, confident in the knowledge that the ancient rule of res judicata covering not only those things which were raised but which could and should have been raised ab initio do not apply. He may proceed first by habeas corpus on a new point in the superior court where the penitentiary is located, then by appeal to the state court of appeals or to the state supreme court, then by certiorari again to the Supreme Court of the United States, then back down to the District Court of the United States and up again to the Court of Appeals and thence to the Supreme Court of the United States again. If a zanier system for the administration of criminal justice has been devised or evolved elsewhere, it is a state secret.

4. The fourth defect in current employment of habeas corpus, as I see it, is that it is regarded by some courts as a necessitous kind of postconviction remedy—a fallacy which, in my judgment, creates an inexplicable and mischievous paradox in the criminal law. The very expression "postconviction" remedy seems to me to be a contradiction in terms. If by conviction is meant final conviction in a court of competent jurisdiction and one affirmed on appeal, then, or course, there are no remedies other than those already exhausted in reaching judgment, sentence and affirmance. But if the conviction sought to be remedied retroactively is the judgment and sentence of a trial court only and appeal has been waived, then the only postconviction remedies available in the courts that I can think of are petition to the trial court for probation and suspension of sentence or to the Governor for executive clemency by way of pardon. If there are to be such things as postconviction remedies other than probation, pardon, appeal and review, the legislature, not the courts, should provide them.

Habeas corpus, in my judgment, therefore, was never intended to and ought not operate as a postconviction remedy. Our judicial system, along with the presumption of innocence, accords a strong presumption of validity to the unappealed from judgment of the superior court and when

the conviction is affirmed on appeal this presumption of validity should, except in the rarest instances, be conclusive unless vitiated by the Supreme Court of the United States on direct application for review of the conviction. Once the process of appeals has been completed, the litigation should end. The constitutions provide for no other remedies and the courts should not invent superfluous ones but instead leave it to the legislature to afford convicted felons whatever further relief the people feel ought to be granted.

5. The writ of habeas corpus has now grown to colossal proportions, operating to deprive the criminal law of what has been traditionally deemed an indispensable ingredient for the effective administration of justice—finality of judgment. Most everyone seems to agree that there is particular virtue in speedy trials, early reviews and final judgments, but very few have come up with any clear ideas of how to achieve them. Finality of judgment once thought to be the sine qua non of a stable judicial system is now in the field of criminal law no more than a phantom, excitedly pursued but rarely caught. I do not advocate finality at the price of due process of law, but rather in consonance with and as one of the elements of it. When a judicial system never lets the judgment become final, it gives no judgment at all. What is called a judgment and sentence becomes no more than an unenforceable transitory expression of a point of view judicially expressed.

And what of the convicted felon who has come to believe his conviction is based on no more than an evanescent judicial declaration? If rehabilitation of criminal offenders and their early restoration to society be the goal of the penal system, how can a prison inmate be psychologically amenable to the rehabilitative processes available to him in a penal institution while at the same time prosecuting petitions over and over again which assert he has been unlawfully and illegally convicted?

6. Finally, I think one should not overlook the costly drain upon the public treasury and waste of time, energy

and talent engendered by the abuse of habeas corpus. The countless investigations, interviews, hearings, remands, trials, briefs, arguments, appeals, court orders and judicial opinions when viewed panoramically across the nation will, I think, show the total burden upon the whole judiciary, state and federal, to be so enormous as to demonstrate that the writ of habeas corpus has grown out of hand and that the judicial systems have thus far lacked the ingenuity to administer it properly. For recent discussions of habeas corpus, *read* 57 Ill. B. J. 634 (April, 1969); 14 Catholic Lawyer 293 (Autumn, 1968); and 15 How. L. J. 200 (Winter, 1969).

I do, therefore, concur only in the result of the opinion to the extent to which it holds that there is vested in the superior court as a court of nearly unlimited jurisdiction an inherent discretionary power to appoint counsel in extraordinary cases to serve without recompense in prosecuting a petition for habeas corpus on behalf of an inmate of a state penal institution where, on the face of the petition, there appears good reason to believe it meritorious and that relief under the writ could well be granted. I must earnestly disagree with the remainder of the majority holding which I fear will add but another tortuous channel to the labyrinthine maze of proceedings now open to a convicted felon whose case has already been repeatedly reviewed.

NEILL and McGOVERN, JJ. (concurring)—We join in Justice Hale's lament, but have signed Justice Hamilton's opinion as we do not believe that the bar should bear a disproportionate economic burden of this burgeoning treadmill of criminal appeals and postconviction prodigality.

FINLEY, J. (concurring in the result)—It has been said repetitively that habeas corpus is civil in nature. In some contexts this has been apt; in others not. In any event, mere repetition, though impressive numerically, has contributed no real substance to the process of characterizing and labeling the great common law writ of habeas corpus. In fact, the repetitive routine is remindful of Lewis Car-

roll's musings in those whimsical, lightly satirical, and perhaps irreverent lines in "The Hunting of the Snark":

"Just the place for a Snark!" the Bellman cried,
  As he landed his crew with care;
  Supporting each man on the top of the tide
  By a finger entwined in his hair.
"Just the place for a Snark! I have said it twice;
  That alone should encourage the crew.
  Just the place for a Snark! I have said it thrice:
  What I tell you three times is true."[2]

As to whether habeas corpus should be regarded as civil or criminal by this court in the instant case, the stark realities are that Elwood Joseph Honore, the petitioner for habeas corpus, is now—in common law parlance—"in durance vile," and has been for several years. Furthermore, he is now asserting that justice has gone afoul, that he is unlawfully deprived of his liberty and freedom. He asks that the legal validity of his continuing imprisonment, which is under the sanction of the criminal law of this state and in a criminal-penal institution of this state, be reviewed by the Supreme Court of Washington. His claim is not one of error, constitutional or otherwise, in the trial court but rather is in the classical tradition of habeas corpus, to wit: the institution holding him does not have jurisdiction over him. If anything further is needed to demonstrate the fallacy and *logical nonsense* (citing Lewis Carroll) involved in characterizing petitioner's plight, and the function of habeas corpus as civil, I would have difficulty imagining what it would be.

Incidentally, it seems to me that Justice Hale's generously embellished but somewhat dubious support for the majority opinion unquestionably involved considerable energy, time and effort, but, I think, too little of relevance to today's applicable legal standards of criminal law administration.

On the other hand the majority opinion is substantially in tune with the times. It recognizes the desirability, the

[2] L. Carroll, Logical Nonsense—The Works of Lewis Carroll 268 (P. Blackburn and L. White ed. 1934).

practical need, and the constitutional necessity of providing appropriate legal assistance for an indigent petitioner for habeas corpus. However, the majority then concludes that funds appropriated to the Supreme Court cannot be used for this purpose without additional substantive legislation authorizing this use. The irony of the majority's position is that the funds appropriated to the Supreme Court by the legislature were not itemized but unquestionably included a sizable amount for this very purpose.

I would end the archaic and mechanical logic relative to habeas corpus mentioned in the majority opinion. It is time to cut through the repetitive and generally irrelevant legalese which beclouds the fundamental and significant function of the writ of habeas corpus pending in the instant case. First, its function is certainly criminal from the standpoint of the petitioner and his circumstances. Second, its basic function is clearly that of reviewing errors in the administration of criminal justice. It is logical nonsense, again citing Lewis Carroll, for courts to continue to blindly characterize the function of habeas corpus as civil when it is asserted by one in petitioner's situation. I would forthrightly acknowledge these two considerations, authorize the appointment of counsel, and payment of a reasonable attorney fee from existing and available funds appropriated to the Supreme Court by the legislature for an appropriate presentation of petitioner's habeas corpus application to the Supreme Court. This conclusion is bolstered by at least three considerations: (1) the legislative history; (2) the availability of funds; and (3) the constitutionally required nature of the expenditure.

Apropos of the legislative history, there are very clear indications that the legislature intended that such costs should be borne by the Supreme Court and in fact appropriated an additional $34,136 to pay for such costs. The budget estimates of the Supreme Court which went to the Appropriations Committee of the legislature contained a request for $34,136 to be used "[i]f the Supreme Court will be required to pay the costs of perfecting a petition for writ

of habeas corpus filed originally in the Supreme Court or the appeal from an order denying a petition for writ of habeas corpus of an indigent incarcerated in a state institution . . ." (Supreme Court Biennial Budget Estimate, p. 32). This sum, $34,136, plus $286,140 for criminal indigent appeals and $9,036 for review of indigent juvenile delinquent proceedings, totaling $329,312, went into the supplemental appropriations bill which, if it had passed, would have contained a proviso that the amount "shall also apply to such other proceedings and at such other times as may be constitutionally required." This bill did not pass but the entire amount, $329,312 including the $34,136 relating to habeas corpus, was transferred back to the main legislative appropriations bill. In this bill the single line appropriation of the Supreme Court, totaling $1,971,061, thus included $329,312 for indigent proceedings, $34,136 of which was for just such appeals as involved in this case. It is quite obvious that the legislature was not only aware of the contingency involved in the instant case but also provided funds to meet it.

This court now has the funds available, and no further substantive authorization should be required for the expenditure herein involved. It is required by the equal protection clause of our federal constitution. This requires, as noted by the majority, that "an attorney who is so appointed and prosecutes the appeal is entitled to compensation for his services from public funds."

I am not unaware of the danger of having an item slip into an appropriations bill without the public notice inhering in additional substantive legislation. Thus funds appropriated for a "Hog Calling Commission" could not be expended unless there was additional substantive legislation which established the commission and authorized the expenditure of funds. This, however, is not the situation with which we are faced. The expenditure involved herein is unique in that the constitution itself authorizes, indeed requires it. The Supreme Court certainly has the inherent power to make this expenditure.

It would be unnecessarily circuitous and would hardly make for good relations between the coordinate branches of government for us to encourage attorneys to file claims for fees with the legislature, as suggested in the majority opinion, when it is so clearly demonstrable that the legislature has already appropriated funds for this very purpose. Thus as indicated I would go further in the instant case than the majority opinion relative to providing reasonable attorney fees for the indigent habeas corpus petitioner—at public expense and from existing funds appropriated to the Supreme Court. Short of this, I do concur in the results as reached in the majority opinion.

WEAVER, J., concurs with FINLEY, J.

ROSELLINI, J. (concurring)—I have signed Justice Hamilton's opinion but I would prefer the result of Justice Finley's opinion.